CASE NO. 22-3462

―――――――――――

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

―――――――――――

**DAVID CIRACI, *et al.*,**
*Plaintiffs-Appellants*,

v.

**J.M. SMUCKER COMPANY,**
*Defendant-Appellee.*

―――――――――――

On Appeal from the United States District Court
for the Northern District of Ohio, No. 5:21-cv-02347-JRA

―――――――――――

**BRIEF OF DEFENDANT-APPELLEE J.M. SMUCKER COMPANY**

―――――――――――

Tracy K. Stratford
Garrett T. Fox
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: 216-586-3939
tkstratford@jonesday.com
gfox@jonesday.com

Yvette McGee Brown
JONES DAY
325 John H. McConnell Blvd.,
Columbus, Ohio 43215
ymcgeebrown@jonesday.com

# **TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ............................................1

CORPORATE DISCLOSURE STATEMENT ......................................................2

STATEMENT OF THE ISSUE PRESENTED........................................................3

STATEMENT OF THE CASE...............................................................................4

    I.    BACKGROUND FACTS ................................................4

    II.   PROCEDURAL HISTORY ...............................................6

SUMMARY OF ARGUMENT ..............................................................................8

STANDARD OF REVIEW ....................................................................................9

ARGUMENT ........................................................................................................11

    I.    THE DISTRICT COURT CORRECTLY FOUND THAT
        PLAINTIFFS FAILED TO ALLEGE SUFFICIENT FACTS
        SHOWING THAT DEFENDANT SMUCKER IS A STATE
        ACTOR FOR FIRST AMENDMENT PURPOSES.........................11

        A.    PLAINTIFFS FAIL TO PLEAD FACTS THAT
            SATISFY THE EXCLUSIVE PUBLIC FUNCTION
            TEST ..................................................................................12

        B.    PLAINTIFFS FAIL TO PLEAD FACTS THAT
            SATISFY THE JOINT ACTION/NEXUS TEST .................13

        C.    PLAINTIFFS FAIL TO PLEAD FACTS TO SATISFY
            THE STATE COMPULSION TEST.....................................14

CONCLUSION ....................................................................................................20

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ...................................21

CERTIFICATE OF SERVICE .............................................................................22

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............23

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970)....................................................................17, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................9, 10

*Bates v. Green Farms Condo. Assoc.*,
  958 F.3d 470 (6th Cir. 2020) ...............................................................10

*Blum v. Yaretsky*,
  457 U.S. 991 (1982).......................................................................15, 16

*Bomer v. Muechenheim*,
  75 F. App'x 998 (6th Cir. 2003) ..........................................................10

*Bridges v. Houston Methodist Hosp.*,
  543 F. Supp. 3d 525 (S.D. Tex. 2021)...................................................12

*Buddenberg v. Weisdack*,
  939 F.3d 732 (6th Cir. 2019) ...............................................................10

*Coley v. Lucas County*,
  799 F.3d 530 (6th Cir. 2015) ...............................................................10

*Crowder v. Conlan*,
  740 F.2d 447 (6th Cir. 1984) ...........................................................16, 17

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ............................................................9, 10

*Cudejko v. Goldstein*,
  22 F. App'x 484 (6th Cir. 2001) ..........................................................10

*Ellison v. Garbarino*,
    48 F.3d 192 (6th Cir. 1995) ................................................................. 12

*Faparusi v. Case Western Reserve Univ.*,
    711 F. App'x 269 (6th Cir. 2017) ........................................................ 19

*Harsman v. Cincinnati Children's Hosp. Med. Ctr.*,
    2021 WL 4504245 (S.D. Ohio Sept. 30, 2021) ............................... 11, 12

*Johnson v. Tyson Foods, Inc.*,
    -- F. Supp. 3d --, 2022 WL 2161520 (W.D. Tenn. 2022) ................... 14

*Lee v. Ohio Educ. Assoc.*,
    951 F.3d 386 (6th Cir. 2020) ............................................................... 15

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ............................................................................. 13

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) .................................................................. 11, 12

*Norwegian Cruise Line Holdings, Ltd. v. Rivkees*,
    553 F. Supp. 3d 1143 (S.D. Fla. 2021) ............................................... 13

*Paige v. Coyner*,
    614 F.3d 273 (6th Cir. 2010) ............................................................... 16

*Penn. Informed Consent Advocates v. Univ of Penn. Health Sys.*,
    2022 WL 2316648 (E.D. Penn. June 28, 2022) ................................... 11

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) ....................................................................... 14, 19

*S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*,
    499 F.3d 563 (6th Cir. 2007) ............................................................... 14

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) .......................................................... 18, 19

*Wolotsky v. Huhn*,
   960 F.2d 1331 (6th Cir. 1992) ....................................................................13, 19

**OTHER AUTHORITIES**

Hillel Y. Levin, *Private Schools' Role and Rights in Setting*
   *Vaccination Policy: A Constitutional and Statutory Puzzle*, 61
   WM. & MARY L. REV. 1607, 1610 n. 8, 1653–54 (2020)...............................12

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant Smucker does not believe that oral argument will be necessary—or even beneficial—in this case.  The right result is clear on the briefs: the Complaint fails to plead facts showing that Smucker is a state actor for First Amendment purposes.  The documents Plaintiffs have put in issue by incorporating them into their Complaint show that Smucker decided to require employee vaccination before any federal mandate.  Smucker's mandate, while informed by federal law, was a result of Smucker's independent judgment about the best interests of its employees and customers. To that end, Smucker never wavered in its decision to require employee vaccination—even after the federal mandate was struck down.

Moreover, Smucker's vaccine mandate is not ultimately what this lawsuit is about.  Rather, the heart of Plaintiffs' claim is that Smucker allegedly failed to accommodate their religious beliefs by denying Plaintiffs religious exemptions and subsequently terminating them for failing to get vaccinated.  The Complaint does not allege that the federal government compelled this result.  To the contrary, the Complaint alleges that the federal mandate required employers to grant religious exemptions from vaccination to qualifying employees. Because Plaintiffs do not allege that the government compelled their alleged injury, Plaintiffs fail to show that Smucker is a state actor for purposes of Plaintiffs' First Amendment claim. Oral argument will do nothing to change this straightforward outcome.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Under 6th Cir. R. 26.1, Defendant-Appellee states that, to the best of its knowledge, there is no publicly owned corporation or affiliate that has a substantial financial interest in the outcome of this litigation.

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

1.    Whether the district court erred by finding that Plaintiffs failed to plausibly allege that Defendant Smucker's private conduct constituted state action under the exclusive public function, nexus, or government compulsion tests?

## STATEMENT OF THE CASE

### I. BACKGROUND FACTS

On September 10, 2021, during the height of the COVID-19 pandemic, President Biden issued Executive Order 14042, requiring "parties that contract with the Federal Government to provide adequate COVID-19 safeguards to their workers." (*Verified Complaint*, R.1, PageID# 2, ¶¶ 1–2.) The Executive Order delegated authority to the Safer Federal Workforce Task Force ("the Task Force") to determine what measures constituted adequate COVID-19 safeguards. (*Id.* at PageID# 2, ¶ 3.)  On September 24, 2021, the Task Force issued guidance requiring federal contractors to "ensure that all covered contractor employees are fully vaccinated for COVID-19, *unless the employee [was] legally entitled to an accommodation*" by December 8, 2021. (*Id.* at PageID# 2, ¶¶ 4–5 (emphasis added).)

The J.M Smucker Company is a publicly traded private corporation headquartered in Orrville, Ohio. Smucker's customers include other private companies as well as the United States government. On September 10, 2021, just one day after Executive Order 14042 was issued (but nearly three weeks before the Task Force's guidance was issued) Mark Smucker, the Chief Executive Officer of Smucker, circulated a message to employees stating that Smucker would "ask and expect all U.S. Smucker employees to be fully vaccinated for COVID-19 in the months ahead." (*Ex. 1 to Verified Complaint*, R. 1-1, at PageID# 22.) The letter also

stated that Smucker intended "to comply with federal requirements which will apply to U.S. employers of 100 people or more as well as companies, including Smucker, that are federal contractors." (*Id.*) The message further stated that Smucker's decision "to establish a vaccine expectation . . . was made prior" to President Biden's Executive Order. (*Id.*)

On October 11, 2021, CEO Smucker notified employees that the company was moving from "expected vaccination" to "required vaccination" and would require "[a]ll salaried U.S. employees . . . [to] show proof of vaccination . . . or be granted [a] religious or medical exemption . . . by December 15, 2021." (*Ex. 2 to Verified Complaint*, R. 1-2, at PageID# 25.) While the message made a reference to the federal administrative guidance, CEO Smucker made clear that the vaccine policy was motivated by the expectations of Smucker's customers and Smucker's own judgment that "requiring vaccines for employees is imperative to ensure the health and safety of employees, customers, visitors and others." (*Id.* at PageID # 24.) Employees who failed to comply with the vaccine policy or request and receive a medical or religious exemption from the policy would be terminated effective December 15, 2021. Employees who requested and received a medical or religious exemption, unless the nature of their role allowed remote work, would be placed on a temporary unpaid leave effective December 16, 2021. (*Verified Complaint*, R.1, PageID# 6–7, ¶ 33.)

## II.  PROCEDURAL HISTORY

On December 15, 2021, the day Smucker's vaccination policy was due to take effect, Plaintiffs filed a Verified Complaint (hereinafter "Complaint") in the United States District Court for the Northern District of Ohio.  The Complaint asserted Free Exercise and Title VII claims against Smucker, as well as a claim under the Emergency Use Authorization Statute. (*Id.* at PageID# 7–9, ¶¶ 38–48.)  Along with their Complaint, Plaintiffs also moved for a temporary restraining order enjoining the vaccination policy's enforcement. (*Plaintiffs' TRO Motion*, R.5, PageID # 58.)

The Complaint alleged that Plaintiffs, who were Smucker employees, all requested and were denied a religious exemption under the vaccine mandate. (*Verified Complaint*, R.1, PageID # 4–5, ¶¶ 18–24.) The Complaint further alleged Plaintiffs were "plac[ed] . . . on indefinite leave without pay, den[ied] . . . benefits, opportunities for pay raises and bonuses, and constructively discharge[ed]."  (*Id*. at PageID # 10, ¶ 59.)  As relevant here, Count I of the Complaint advanced a Free Exercise claim under the First Amendment to the United States Constitution. In particular, the Complaint alleged that Smucker should be considered a state actor subject to the First Amendment's Free Exercise clause because Smucker adopted the vaccine mandate "according to the mandates and guidance set forth by the Federal Government." (*Id.* at PageID # 7, ¶ 37.) The Complaint then alleged that Smucker violated the First Amendment by failing to accommodate or give due consideration

6

to Plaintiffs' "sincerely held religious beliefs that prevent them" from receiving the vaccine. (*Id*. at PageID # 9, ¶ 51.)

On December 20, 2021, Smucker filed its opposition to Plaintiffs' request for a temporary restraining order, along with a motion to dismiss Plaintiffs' Complaint in its entirety. (*Smucker's TRO Opposition*, R. 13, PageID # 89; *Smucker's Motion to Dismiss*, R.14, PageID # 133.) On December 22, 2021, the district court denied Plaintiffs' request for a temporary restraining order, finding that Plaintiffs were unlikely to succeed on any of their asserted claims. (*Order Denying TRO*, R.15, PageID # 158–60.) Then, on January 19, 2022, in their opposition to Smucker's motion to dismiss, Plaintiffs conceded that their Title VII claim should be dismissed for failure to exhaust administrative remedies. (*Defendants' Opposition to Smucker's Motion to Dismiss*, R.18, PageID # 173.) Further, Plaintiffs conceded that their Emergency Use Authorization claim should be dismissed as inapplicable to Smucker. (*Id.*) Only the Free Exercise claim remained.

On April 20, 2022, the district court granted Defendant Smucker's motion to dismiss. Acknowledging that Plaintiffs had conceded all other claims, the district court considered only Plaintiffs' Free Exercise claim. Ultimately, the district court found that the Complaint failed to state a viable Free Exercise claim, as Plaintiffs did not allege (1) "that vaccination is a traditional and exclusive public function," (2) "that Defendant was compelled to implement the vaccination mandate," or (3)

"that Defendant acted jointly with the government" in terminating Plaintiffs. (*Order Granting Smucker's Motion to Dismiss*, R.21, PageID # 191.)  Accordingly, the district court granted Defendant Smucker's motion, dismissed the Complaint in its entirety, and entered judgment in Smucker's favor. (*Id.*; *Judgment*, R.22, PageID # 193.)  Plaintiffs timely appealed. (*Plaintiffs' Notice of Appeal*, R.23, PageID # 194.)

## <u>SUMMARY OF ARGUMENT</u>

Plaintiffs' case is a transparent attempt to shoehorn a private employment dispute into a federal constitutional claim.  Plaintiffs sat on their employment grievances for months, instead of following the administrative process Congress established in Title VII. As Smucker's policy went into effect, Plaintiffs scrambled to advance a claim that did not require exhaustion of administrative remedies.  Thus, they now style their private discrimination claim as a Free Exercise claim. And, while the First Amendment undoubtedly protects many of our most sacred individual liberties, its scope is not (and was never intended to be) unlimited.  The First Amendment does not reach private conduct. That well-established principle should prevail here.

In bringing their creative but hopelessly flawed claim, Plaintiffs fail to allege the extraordinary circumstances necessary to overcome the presumption that the First Amendment governs only government action.  First, Plaintiffs fail to allege that vaccine mandates, like the one adopted by Smucker, have historically been the

exclusive province of the government.  Indeed, private employers and private schools have created and enforced such mandates for many years for the welfare of workers and students.  Second, Plaintiffs fail to show that the Biden Administration was involved in their termination from Smucker, as necessary to satisfy the joint action, or "nexus," test.  And finally, Plaintiffs fail to show that any action by the federal government compelled Smucker to deny their religious exemptions and terminate their employment.  Indeed, Plaintiffs pled the opposite, acknowledging that the Task Force mandate explicitly required federal contractors to grant religious exemptions from vaccination to qualifying employees. (*Verified Complaint*, R.1, PageID# 2, ¶ 5.)

Accordingly, Smucker is not a state actor for purpose of Plaintiffs' Free Exercise claim, and this Court should affirm the district court's dismissal of the Complaint.

## <u>STANDARD OF REVIEW</u>

This Court reviews *de novo* the district court's decision granting Defendant Smucker's motion to dismiss.  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).  This Court, like the district court, must review the Complaint to determine whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In measuring the Complaint against the plausibility standard,

the Court trades in concrete allegations, not conclusory factual or legal statements masquerading as fact. *Buddenberg v. Weisdack*, 939 F.3d 732, 738 (6th Cir. 2019). To that end, in reviewing a motion to dismiss, the Court "start[s] 'by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679).

"[L]egal conclusions couched as factual allegations need not be accepted as true" for purposes of a motion to dismiss. *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Napolitano*, 648 F.3d at 369 (quoting *Iqbal*, 556 U.S. at 678). Such impermissible conclusions include bald assertions that the defendant is a state actor for purposes of a constitutional claim. *See, e.g., Cudejko v. Goldstein*, 22 F. App'x 484, 485 (6th Cir. 2001) (dismissing plaintiff's complaint because he failed to plausibly allege that the defendant was a state actor); *accord Bomer v. Muechenheim*, 75 F. App'x 998, 999 (6th Cir. 2003).

Only with the make-weight conclusions stripped away does the Court determine whether the Complaint "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Coley v. Lucas County*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Iqbal*, 556 U.S.

10

at 678).  Against this backdrop, as the district court found, Plaintiffs' Complaint utterly fails to plead factual content to raise a plausible First Amendment claim against Defendant Smucker.

## ARGUMENT

## I.  THE DISTRICT COURT CORRECTLY FOUND THAT PLAINTIFFS FAILED TO ALLEGE SUFFICIENT FACTS SHOWING THAT DEFENDANT SMUCKER IS A STATE ACTOR FOR FIRST AMENDMENT PURPOSES.

Plaintiffs' allegation that Smucker's vaccination policy failed to accommodate their religious beliefs—a claim Smucker vehemently denies—can only form the basis of a constitutional claim if Smucker is a government actor.  The First Amendment "prohibits only governmental abridgment" of free religious exercise. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Addressing similar constitutional challenges to private employers' vaccination policies, courts have repeatedly acknowledged the "well settled principle of constitutional law that there exists a line between state action subject to [First] Amendment scrutiny and private conduct (however exceptionable) that is not." *Penn. Informed Consent Advocates v. Univ of Penn. Health Sys.*, 2022 WL 2316648, at *2 (E.D. Penn. June 28, 2022); *accord Harsman v. Cincinnati Children's Hosp. Med. Ctr.*, 2021 WL 4504245, at *3 (S.D. Ohio Sept. 30, 2021) (quoting *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 WL 4398027, at *3 (E.D. Ky. Sept. 24, 2021)).

Accordingly, "without establishing that Defendants are state actors, Plaintiffs' constitutional claims cannot stand." *Harsman*, 2021 WL 4504245, at *3 (quoting *Beckerich*, 2021 WL 4398027, at *3).   As the district court correctly noted, the Supreme Court has recognized three "limited circumstances" in which a private entity may become subject to constitutional constraints: (1) "when the private entity performs a traditional, exclusive public function;" (2) "when the government compels the private entity to take a particular action;" or (3) "when the government acts jointly with the private entity." *Halleck*, 139 S. Ct. at 1928.   Plaintiffs fail to plead facts that satisfy any of these three tests.

### A.   Plaintiffs Fail to Plead Facts That Satisfy the Exclusive Public Function Test.

The Complaint contains no allegations—conclusory or otherwise—that could satisfy the exclusive public function test.   First, as Smucker explained below, a private vaccine mandate is a far cry from an "exclusive prerogative of the state," that satisfies the public function test.   Indeed, private employers and private schools often institute mandatory vaccination policies for the welfare of their respective students and employees. *Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995); *see* Hillel Y. Levin, *Private Schools' Role and Rights in Setting Vaccination Policy: A Constitutional and Statutory Puzzle*, 61 WM. & MARY L. REV. 1607, 1610 n.8, 1653–54 (2020) (citing cases relating to private school vaccine mandates); *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 527–28 (S.D. Tex. 2021) (private

healthcare provider vaccination mandate); *Norwegian Cruise Line Holdings, Ltd. v. Rivkees*, 553 F. Supp. 3d 1143, 1167 (S.D. Fla. 2021) (cruise ship vaccination mandate).

Plaintiffs' appellate brief does not dispute this point, effectively conceding that Smucker is not a state actor under the public function test.

### B. Plaintiffs Fail to Plead Facts That Satisfy the Joint Action/Nexus Test.

Second, the joint action, or "nexus," test requires a plaintiff to show that the defendant "acted together with or . . . obtained significant aid from state officials" in committing the conduct Plaintiffs complain of. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Tellingly, the Complaint does not allege (and Plaintiffs' appellate brief does not argue) that the government was "intimately involved in the challenged private conduct" at issue here—the denial of Plaintiffs' religious accommodations and their eventual termination. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

Instead, Plaintiffs hang their hat solely on the Task Force's guidance requiring vaccination of employees. Even putting aside the fact that the Complaint's exhibits show that Smucker decided to require employee vaccination weeks before administrative guidance required it—and continued to do so after that guidance was struck down—Plaintiffs' claim still fails as a matter of law. As Smucker explained below, regulation of a private entity, no matter how extensive, is "insufficient . . . to

establish the required nexus between [Plaintiff's] complained-of conduct and the State." *Johnson v. Tyson Foods, Inc.*, -- F. Supp. 3d --, 2022 WL 2161520, at *5 (W.D. Tenn. 2022) (collecting Sixth Circuit and Supreme Court cases); *accord Rendell–Baker v. Kohn*, 457 U.S. 830, 841–43 (1982) (holding private school's personnel decisions not attributable to the state, despite "extensive regulation of the school generally"). Accordingly, Smucker is not a state actor under the nexus test.

## C.    Plaintiffs Fail to Plead Facts to Satisfy the State Compulsion Test.

That leaves only the state compulsion test to which Plaintiffs devote virtually their entire appellate brief. "The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 563, 565 (6th Cir. 2007).

Despite the real estate these arguments occupy in Plaintiffs' appellate brief, the Complaint sets forth only two allegations that hint at government compulsion here. The first allegation is that Smucker "acted pursuant to 'policies, practices, customs, and procedures created, adopted, and enforced under color of federal law.'" (*Order Granting Smucker's Motion to Dismiss*, R.21, PageID # 191.) The district court rightly disregarded this allegation as conclusory, as it is too vague to provide Smucker notice of the basis of Plaintiffs' claim or set forth any facts to support Plaintiffs' allegations of government coercion or encouragement to make Smucker

a state actor for First Amendment purposes. *See, e.g.*, *Lee v. Ohio Educ. Assoc.*, 951 F.3d 386, 392–93 (6th Cir. 2020) (dismissing the plaintiff's claim for failing to satisfy Rule 8(a)(2)'s requirement that the Complaint "provide the defendants adequate notice of the claims against them and the grounds upon which each claim rests").

To satisfy the government coercion test, Plaintiffs need to allege facts showing that the government coerced Smucker into taking *the particular action that allegedly injured Plaintiffs*—i.e., the denial of their religious exemptions and subsequent termination under Smucker's vaccination policy. Plaintiffs do not (and cannot) make any such allegation in the Complaint, as the Biden Administration had no part in Plaintiffs' termination. Quite the contrary, the Complaint itself alleges that **the Task Force's mandate explicitly required employers to grant medical and religious accommodations to qualifying employees**. (*Verified Complaint*, R.1, PageID# 2, ¶ 5.) ("Task Force guidance called for federal contractor employees to receive a complete round of Covid-19 injections by January 18, 2022, unless legally entitled to an accommodation for medical or religious reasons.").

The Supreme Court's decision in *Blum v. Yaretsky*, 457 U.S. 991 (1982), illustrates the fatal flaw in Plaintiffs' Free Exercise claim. In *Blum*, nursing home residents claimed that various private nursing homes violated the plaintiffs' constitutional due process rights by transferring them between homes without giving

them an opportunity to be heard.  The plaintiff residents claimed they could invoke their constitutional rights under the state action doctrine because the nursing homes were heavily regulated, and because the patient transfer regime was created by New York law.  The individual decision to transfer a given resident, however, was not made by state officials, but by privately employed physicians.

The Supreme Court found no state action.  Even though New York law expressly enabled patient transfers *in general*, the Court emphasized that the *individual* "decisions to transfer residents" that the plaintiffs complained of "were solely 'medical judgments made by private parties.'"  *Paige v. Coyner*, 614 F.3d 273, 279 (6th Cir. 2010) (quoting *Blum*, 457 U.S. at 1008).  Accordingly, because the plaintiffs failed to show that "the State [was] responsible for the decision to discharge or transfer *particular* patients," the Court dismissed the plaintiff's constitutional claim.  *Blum*, 457 U.S. at 1008 (emphasis added); *accord Crowder v. Conlan*, 740 F.2d 447, 452 (6th Cir. 1984) ("Undoubtedly there may be situations where state action is manifest in the decisions of a private entity because public officials work behind the scene to influence ***a particular result*** . . . In this case, however, this situation does not exist, and there was no state action.") (emphasis added).

*Blum* and *Crowder* dispose of this case.  At best, Plaintiffs allege that Smucker made its COVID-19 vaccine expectation mandatory as a result of the Task

Force's guidance. But Plaintiffs do not (and cannot) allege that the Biden Administration had anything to do with Smucker's decision to deny each Plaintiff's request for a religious exemption or to eventually terminate each Plaintiff under the vaccination policy. Accordingly, Plaintiffs have failed to show state action that transforms Smucker into a government actor subject to the requirements of the First Amendment.

The Supreme Court's decision in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), does not support Plaintiffs' position, even on Plaintiffs' erroneous reading that a private party becomes a state actor by complying with the law. First, and most importantly, *Adickes* involved a "state-enforced custom *requiring racial segregation*" of restaurant patrons in a Mississippi town. *Id.* at 148 (emphasis added). That is, in *Adickes*, unlike in *Blum* and *Crowder*, governing law compelled the racial discrimination that formed the basis of the plaintiff's lawsuit. *Id.* In this case, by contrast, even if Smucker's policy were adopted as a result of Task Force guidance (it was not), the vaccine policy itself is not the basis of Plaintiffs' claim. Rather, as explained above, Plaintiffs' claim rests on the denial of their religious exemptions and subsequent termination. (*Verified Complaint*, R.1, PageID# 4–5, 8, ¶¶ 18–24, 46.) Plaintiffs do not allege that the Task Force guidance required—let alone specifically compelled—the denial of Plaintiffs' individual religious exemption requests or each Plaintiff's termination for failure to get vaccinated. In fact, as

17

explained above, the Task Force guidance *explicitly required the opposite result* for employees who qualified for a religious exemption. (*Id.* at PageID# 2, ¶ 5.)

Second, Plaintiffs fail to identify a decision citing *Adickes* for the proposition that a private actor becomes a state actor merely by complying with a presumptively valid law. Rather, Courts have uniformly held that "compulsion in the form of a generally applicable law, without more, is [in]sufficient to deem a private entity a governmental actor." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 841 (9th Cir. 1999). Indeed, the Ninth Circuit explicitly rejected Plaintiffs' argument in *Sutton*: "[W]e do not read *Adickes* as a case in which a private defendant was held responsible [as a state actor] merely for complying with a presumptively valid state law." *Id.*

Further, the Ninth Circuit emphasized the disastrous consequences of finding state action any time a private entity complies with a generally applicable law:

> To accept Plaintiff's argument would be to convert every employer— whether it has one employee or 1,000 employees—into a governmental actor every time it complies with a presumptively valid, generally applicable law, such as an environmental standard or a tax-withholding scheme. Private employers would then be forced to defend those laws and pay any consequent damages, even though they bear no real responsibility for the violation of rights arising from the enactment of the laws. "Statutes and laws regulate many forms of purely private activity, such as contractual relations and gifts, and subjecting all behavior that conforms to state law to the Fourteenth Amendment would emasculate the [government] action concept.

*Sutton*, 192 F.3d at 838–39.  This Court's decisions have consistently demonstrated agreement with the Ninth Circuit's reasoning in *Sutton*.  *See, e.g.*, *Faparusi v. Case Western Reserve Univ.*, 711 F. App'x 269, 276 (6th Cir. 2017); *cf. Wolotsky*, 960 F.2d at 1336 ("The actions of a private entity do not become state action merely because the government provides substantial funding to the private party.") (citing *Rendell–Baker*, 457 U.S. at 840).

Accordingly, Plaintiffs have failed to plead facts showing that Smucker engaged in state action under the public function, nexus, or state compulsion tests. Because Plaintiffs cannot establish that Smucker is a state actor for purposes of its Free Exercise claim, this Court should affirm the district court's dismissal of the Complaint.

## <u>CONCLUSION</u>

For these reasons, this Court should affirm the judgment of the district court.

September 9, 2022

Respectfully submitted,

<u>/s/ Tracy K. Stratford</u>
Tracy K. Stratford
Garrett T. Fox
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: 216-586-3939
tkstratford@jonesday.com
gfox@jonesday.com

Yvette McGee Brown
JONES DAY
325 John H. McConnell Blvd.,
Columbus, Ohio 43215
ymcgeebrown@jonesday.com

*Counsel for Defendant-Appellee*
*J.M. Smucker Company*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3740 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Cir. R. 32(b)(1), as counted using the word-count function on Microsoft Word 2016 software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman style, 14 point font.

September 9, 2022                    /s/ Tracy K. Stratford
                                     Tracy K. Stratford

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2022, I electronically filed the original of the foregoing brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/ Tracy K. Stratford
Tracy K. Stratford

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6th Cir. R. 28(b)(1)(A)(i), Defendant-Appellee J.M. Smucker Company hereby designates the following relevant district court documents:

| *David Ciraci v. J.M. Smucker Company,* U.S. District Court Case No. 5:21-cv-02347-JRA, N.D. Ohio | | |
|---|---|---|
| **Record Entry** | **Description** | **PageID# Range** |
| 1 | Verified Complaint and Exhibits | 1–44 |
| 5 | Plaintiffs' Motion for a Temporary Restraining Order | 58–60 |
| 6 | Brief in Support of Plaintiffs' Motion for a Temporary Restraining Order | 61–77 |
| 13 | Defendant's Opposition to Motion for a Temporary Restraining Order and Exhibit | 89–132 |
| 14 | Defendant's Motion to Dismiss the Verified Complaint | 133–156 |
| 15 | District Court Order Denying Plaintiffs' Motion for a Temporary Restraining Order | 157–161 |
| 18 | Plaintiffs' Opposition to Defendant's Motion to Dismiss the Verified Complaint | 166–174 |
| 19 | Defendant's Reply in Support of Motion to Dismiss the Verified Complaint | 175–186 |
| 21 | District Court Memorandum and Order Granting Defendants' Motion to Dismiss the Verified Complaint | 188–192 |
| 22 | District Court Judgment in favor of Defendant | 193 |
| 23 | Plaintiffs' Notice of Appeal | 194–195 |